# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

ANDREW DOMINIC ROBINSON                                                              PLAINTIFF
ADC# 652013

v.                                        5:10CV00322-DPM-JJV

RODERICK JOHNSON, Lt.
Varner Supermax, Arkansas
Department of Correction; *et al.*                                               DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge D. P. Marshall Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form

of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## DISPOSITION

**I.   INTRODUCTION**

The remaining Defendants are Lt. Johnson, Lt. Emsweller, Sgt. Sherrill, Sgt. Perkins, and Sgt. Jasper.[1] Plaintiff alleges that on April 16, 2010, the Defendants violated his constitutional rights when they used excessive force to extract him from his cell and subdue him. (*Id.* at 5).

This Court previously recommended granting summary judgment on this point but the district judge remanded for further development of the record, including examination of the video of the events. (Doc. No. 71.) On August 23, 2013, Defendants provided the Court with the video. (Doc. No. 72.) After careful consideration of the video recording, the Court concludes summary judgment is appropriate and this case should be dismissed.

**I.   SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[1] Plaintiff's conditions-of-confinement claims against Sgt. Spencer and Sgt. Rucker were dismissed in an Order dated August 15, 2013 (Doc. No. 71). They are not named in the excessive force claims and should have been terminated as defendants on August 15, 2013.

party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the Court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Summary judgment will be granted for disputes that are not genuine or about facts that are immaterial. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010). Moreover, as is the case here, when an uncontested videotape is submitted in support of a motion for summary judgment, the court is to view the facts in the light depicted by the videotape. *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

## II. UNDISPUTED FACTS

### A. Statement of Facts

On April 16, 2010, Plaintiff was scheduled for cell reassignment. (Doc. No. 50 at 2.) When Lts. Emsweller and Johnson arrived at his cell, he refused to submit to restraints. (*Id.*) After Plaintiff refused to comply with several direct orders, the officers decided to "facilitate [a] planned use of force." (*Id.* at 3.)

Defendants cite to Administrative Directive 09-17, which is the ADC's policy on use of force. (*Id.* at 3.) The policy authorizes the use of non-deadly force when necessary to restrain,

maintain, or regain control of an inmate. (*Id.*) Non-deadly force may also be used to protect individuals, to protect property, or to compel compliance with orders and includes the use of chemical agents. (Doc. No. 50 at 3.)

During his deposition, Plaintiff admitted he did not "submit to the cuffs" as directed. (Doc. No. 49-1 at 4.) He states he did not follow the officers' instructions because he "was in fear of [his] life." (*Id.*)

Officers then sprayed "three one-second bursts" of pepper spray into Plaintiff's cell. (Doc. No. 50 at 3.) Plaintiff remained huddled in a corner of his cell wrapped in a blanket with a thermal covering his mouth and nose. (*Id.*) Lt. Johnson then informed Warden Banks of the situation and requested authorization to use "sub-lethal munitions."[2] (*Id.* at 4.) Warden Banks authorized the increased force, but before employing it, Lt. Johnson warned Plaintiff to comply with orders or sub-lethal munitions would be used. (*Id.*) Plaintiff admittedly refused. (Doc. No. 49-1 at 6.) As a result, Lt. Johnson deployed a ".32 caliber stinger round" into Plaintiff's cell. When this had no effect, Lt. Johnson deployed a second "stinger" and one blast of pepper spray. (Doc. No. 50 at 5.)

Plaintiff admits that despite the weapons deployed, he refused to comply with orders to submit. (Doc. No. 49-1 at 7.) Then Lt. Johnson requested assistance from Sgt. Sherrill who retrieved an "O.C. Rubber Ball grenade" from the control booth. (Doc. No. 50 at 5.) When Sgt. Sherrill approached the cell, he gave Plaintiff three orders to submit and warned that failure to submit would result in the use of munitions. (*Id.*) Plaintiff refused and Sgt. Sherrill deployed the grenade. (*Id.* at 6.)

Because none of the munitions caused compliance, officers assembled an extraction team

---

[2]Sub-lethal munitions are non-life threatening tools that deploy rubber balls or rubber balls containing pepper powder. (Doc. No. 50 at 37).

4

...

consisting of Sgts. Sherrill, Crompton, and Perkins, COII Williams, and Lt. Emsweller. (*Id.*) Nurse Robinson was also present. (Doc. No. 50 at 6.)  Before entering the cell, Plaintiff was ordered again to submit or he would forcibly be removed from the cell. (*Id.*)  Plaintiff refused to comply and the team forcibly removed him from his cell. (*Id.*)  During the removal, Plaintiff resisted Sgts. Sherrill and Perkins's efforts to place him in handcuffs. (*Id.*)

The team then placed Plaintiff in an isolation shower area. (*Id.* at 7.)  He was given medical attention and Nurse Robinson found no serious injury (*Id.* at 8) and Plaintiff did not describe any at that time. (Doc. No. 49-1 at 8.)  Several witnesses stated Plaintiff continued to be "aggressive, angry and shouting obscenities." (Docs. No. 49-2 at 3; 49-6 at 2; 49-9.)  He was placed on behavior control and issued a major disciplinary. (Doc. No. 49-2 at 10).

**B.     Video Evidence**

A close review of the video recording of events generally confirms Defendants' Statement of Facts. (Doc. No. 50.)  The video makes abundantly clear that, at any point, Plaintiff could have chosen to submit to restraints and cease the need for force.

The video also reveals that the lights in Plaintiff's cell were dark and Plaintiff had placed papers inside the cell door windows preventing officers from fully seeing inside his cell.  Officers allowed substantial time between each use of force to allow Plaintiff the opportunity to change his mind and submit to restraints.  Each time officers used force, they announced their intentions and allowed Plaintiff the opportunity to avoid the force.  After deploying the second "stinger," officers appeared hopeful Plaintiff would submit and were heard saying, "He's done now.  There ain't no way he can take that powder."  Unfortunately, they were wrong and the video shows officers deploying an "O.C. Rubber Ball grenade" and a third ".32 caliber stinger round."  Each time, officers waited for a substantial period of time before deploying more force and at every turn officers

were heard asking Plaintiff submit to handcuffs and come out of the cell. Despite the increased force and numerous requests to end the standoff, Plaintiff refused and remained barricaded in his cell, leaving officers no choice. They then assembled an extraction team to forcibly remove Plaintiff from the cell.

As the extraction team assembled outside his cell, officers warned Plaintiff that this was his "last chance" and Plaintiff still refused to submit. The extraction team swiftly entered the room where they were met with substantial resistance. The video depicts a long and very violent confrontation whereby Plaintiff is seen fighting hard against the officers's attempts to subdue him. The video also shows that the officers were coughing and choking from the residual chemical agents previously deployed in the cell. Once Plaintiff was subdued, officers quickly moved him to the shower area so he could wash off the chemicals and provide him medical assistance. All the while, Plaintiff continued to curse and taunt the officers.

### III. ANALYSIS

#### A. Excessive Force

The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers. *Johnson v. Hamilton*, 452 F.3d 967, 972 (8th Cir. 2006). The United States Court of Appeals for the Eighth Circuit explained the principles governing prisoner claims of excessive force in *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002), as follows:

> The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers, *Whitley v. Albers*, 475 U.S. 312, 319 (1986), regardless of whether an inmate suffers serious injury as a result. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Officers are permitted to use force reasonably "in a good-faith effort to maintain or restore discipline," but force is not to be used "maliciously and sadistically to cause harm." *Id.* at 7. ... Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts

>by the officers to temper the severity of their forceful response, and the extent of the inmate's injury. *Id. See also Hickey v. Reeder*, 12 F.3d 754, 758 (8th Cir. 1993). *Accord Fillmore v. Page,* 358 F.3d 496, 503-10 (7th Cir. 2004).

*Id.*

The infliction of pain in the course of a prison security measure is not cruel and unusual punishment "simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley v. Albers,* 475 U.S. 312, 319 (1986). "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Johnson v. Bi-State Justice Center/Arkansas Dept. of Corrections*, 12 F.3d 133, 136 (8th Cir. 1993) (citing *Whitley*, 475 U.S. at 322).

The amount of force reasonably necessary to subdue prisoners is not the same for all prisoners. "We are not prepared to say that preemptive force cannot be resorted to in the case of prisoners whom corrections officers reasonably believe to be unusually violent. The question of excessiveness of force, in other words, cannot be assessed in a vacuum; it will vary from circumstance to circumstance. Officers are certainly not required in all cases to wait until they are attacked before they resort to force. Such a rule would expose them to an unnecessary and unreasonable risk of harm." *McCrary-El v. Shaw* , 992 F.2d 809, 812 (8th Cir. 1993).

Defendants argue that they are entitled to summary judgment as a matter of law because the force they used was justified under the circumstances and applied in a good faith manner to maintain and restore discipline. (Doc. No. 51 at 4.) Whether a situation justifies the use of force to maintain or restore discipline is a fact-specific issue that turns on the circumstances of the individual case or the particular prison setting. *Johnson v. Blaukat*, 453 F.3d 1108, 1113 (8th Cir. 2006) (quotations omitted).

After reviewing the video, the Court finds this is exactly the type of violent scenario that entitles prison officials deference in their decision-making. *Whitley,* 475 U.S. 312. It is worth noting that these events occurred at the Supermax Unit of the Arkansas Department of Correction, and Mr. Robinson has a violent disciplinary record, including assault against staff, battery against staff, and throwing fluids or excrement. (Doc. No. 50 at 1-2.)

When Plaintiff refused to comply direct orders to submit to restraints, officers deployed bursts of pepper spray into his cell. The spray had no effect on him because he was huddled in a corner under a blanket covering his mouth and nose. Despite several warnings that refusal to obey orders would result in deployment of sub-lethal munitions, Plaintiff remained defiant. As a result, Defendants increased the amount of force - including using sub-lethal munitions in an attempt to gain control over Plaintiff.

Plaintiff's actions wholly caused the use of force by Defendants. At any time, Plaintiff could have followed the officers' instructions and avoided the use of force. And at every stage of deployment of force, Defendants attempted to end the situation by giving Plaintiff warnings. Therefore, under the circumstance created by Plaintiff, the Defendants' use of chemical agents and sub-lethal munitions were good-faith efforts to gain control over him and were not undertaken with a purpose to maliciously and sadistically cause harm. Furthermore, when compared to the other forms of force available to prison officials, the use of a chemical agent by prison officials to control a recalcitrant inmate is considered a tempered response. *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000).

Furthermore, use of the extraction team was proper when all other measures failed. Plaintiff again was given the opportunity to submit to restraints before the team entered his cell and Plaintiff refused. And when the team entered his cell, Plaintiff fought officers rather than submitting. The

video tape makes clear that the force used in the cell was in response to Plaintiff fighting against the officers and refusing to be subdued. Even after officers finally gained control over Plaintiff and removed him from his cell, the video shows Plaintiff remained very hostile and required at least three officers to keep him under control. Finally, as he was taken to the shower area, the video shows Plaintiff taunting officers about the fact it took eight officers to subdue him and they "still ain't done nothing."

Accordingly, the Court finds that there are no genuine issues for trial regarding Plaintiff's excessive force claim. The use of force was undertaken in good faith and not with a malicious and sadistic intent. Plaintiff, therefore fails to state an excessive force claim and Defendants Johnson, Emsweller, Sherrill, and Perkins are entitled to summary judgment.

### IV. CONCLUSION

1. Defendants' Motion for Summary Judgment (Doc. No. 49) should be GRANTED and Lt. Johnson, Lt. Emsweller, Sgt. Sherrill, Sgt. Perkins, and Sgt. Jasper should be dismissed.

2. The Clerk of the Court should show on the docket that Sgt. Spencer and Sgt. Rucker were terminated as defendants on August 15, 2013.

3. This cause of action should be DISMISSED with prejudice.

4. The Court should certify pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

IT IS SO ORDERED this 7th day of October, 2013.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE